**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO
The Honorable Michael E. Romero**

| | |
|---|---|
| In re: ) | |
| ) | Case No. 08-23125 MER |
| MERCURY COMPANIES, INC., ) | |
| ) | Chapter 11 |
| Debtor. ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ ) | |
| ) | |
| MERCURY COMPANIES, INC., ) | Adversary No. 10-1133 MER |
| ) | |
| Plaintiff/Counter-Defendant, ) | |
| ) | |
| v. ) | |
| ) | |
| FNF SECURITY ACQUISITION, INC., ) | |
| ) | |
| Defendant/Counter-Claimant ) | |
| ) | |
| and ) | |
| ) | |
| FIDELITY NATIONAL TITLE COMPANY, ) | Signed/Docketed |
| USA DIGITAL SOLUTIONS, INC., ) | May 15, 2012 |
| AMERICAN HERITAGE TITLE ) | |
| AGENCY, INC., and MERCURY ) | |
| SERVICES OF UTAH, INC. ) | |
| ) | |
| Defendants. ) | |

**ORDER**

This matter comes before the Court on the following matters:

1.  *Plaintiff's Motion for Partial Summary Judgment* (Docket No. 62) and the
*Defendant's Response to Plaintiff's Motion for Partial Summary Judgment*
(Docket No. 89 )

2.  *Defendants' Motion for Partial Summary Judgment* (Docket No. 90), and the
*Plaintiff's Response to Motion for Partial Summary Judgment* (Docket No. 102).

3.  *Defendant FNF Security Acquisition, Inc.'s Additional Motion for Partial
Summary Judgment* (Docket No. 124), and the Plaintiff's *Response to Motion for
Partial Summary Judgment* (Docket No. 145).

# BACKGROUND FACTS

## A.    Procedural Status

On January 27, 2010, Plaintiff Mercury Companies, Inc. ("Mercury") filed its *Complaint* against FNF Security Acquisition, Inc.  A *First Amended Complaint* was filed July 28, 2010,[1] adding as defendants Fidelity National Title Company, USA Digital Solutions, Inc., American Heritage Title Agency, Inc., Mercury Settlement Services of Utah, Inc., and United Title Company, Inc. (the "Amended Complaint").  On February 16, 2011, Mercury filed a Motion for Partial Summary Judgment as to Mercury's Fourth Claim for Relief, to which Defendant FNF Security Acquisition, Inc. ("FNF") filed a Response and Cross-Motion for Partial Summary Judgment.  FNF filed a second Motion for Partial Summary Judgment on July 13, 2011.

On August 15, 2011, FNF filed a Motion to Withdraw the Reference, which was denied by the United States District Court for the District of Colorado on October 31, 2011.  Thereafter, this Court held a status conference and later a hearing on the above pending motions.

## B.    General Background

The Amended Complaint alleges Mercury entered into a stock purchase agreement (the "Stock Purchase Agreement") with Defendant Fidelity National Title Company ("Fidelity") under which Fidelity would purchase from Mercury all the outstanding capital stock of certain of Mercury's subsidiaries, specifically Defendants USA Digital Solutions, Inc., American Heritage Title Agency, Inc., Mercury Settlement Services of Utah, Inc., and United Title Company, Inc. (the "Colorado Subsidiaries"), and take on the Colorado Subsidiaries' ongoing operational liabilities.  The Amended Complaint alleges Fidelity did not fully perform under the stock purchase agreement.  In addition, it alleges Mercury paid approximately $1.68 million to the Colorado Subsidiaries after the transaction with Fidelity closed, for transactions which had occurred pre-closing, in the belief the payment was required under the stock purchase agreement.  The Amended Complaint seeks 1) recovery of a fraudulent transfer against Fidelity; 2) damages for breach of contract against Fidelity; 3) damages from alleged breach of implied covenant of good faith and fair dealing by Fidelity; 4) recovery of the $1.68 million as a fraudulent transfer against the Colorado Subsidiaries; and 5) avoidance of the $1.68 million payment to the Colorado Subsidiaries as a preference under 11 U.S.C. §547.[2]

---

[1] *The First Amended Complaint* was docketed on June 14, 2010, along with a *Motion to Amend Complaint*.  The motion was granted on July 28, 2010, so the *First Amended Complaint* was deemed to be filed on that date.

[2]  Unless otherwise noted, all future statutory references in the text are to Title 11 of the United States Code.

The Defendants' Answer to the Amended Complaint admits Mercury was in a difficult financial position in August 2008, and admits Comerica Bank's sweep of Mercury's bank accounts and the closure of Mercury's California, Arizona, and Texas subsidiaries rendered Mercury insolvent.  The Defendants also admit Fidelity entered into a stock purchase agreement to purchase the outstanding stock of the Colorado Subsidiaries.  They agree Fidelity wired $1 million of the $5 million purchase price directly to Mercury, and wired an additional $1,484,004 to Comerica Bank, but refused to pay the remaining $2,516,000.

However, the Defendants deny knowledge as to whether Mercury was insolvent on the date of the sale or as a result of the sale, and deny the $5 million purchase price was less than equivalent value.  They dispute assertions of breach of contract by Fidelity, and deny the transfers of the funds of the Colorado Subsidiaries constituted fraudulent transfers or preferences.

The Defendants raise the following affirmative defenses in their Answer: 1) Mercury's claims are subject to the doctrine of estoppel; 2) Mercury's claims are barred due to a failure of consideration; 3) Mercury's claims are barred due to laches; 4) Mercury has waived the claims; 5) Mercury's claims are barred in whole or in part due to failure to comply with a condition precedent; 6) Mercury has not stated a cause of action upon which relief may be granted; 7) Mercury's claims are barred in whole or in party by the applicable statue of limitations; 8) the alleged fraudulent transfers by Mercury to Defendant are not avoidable because the Defendants took such transfers for value and in good faith; 9) the alleged preferential transfers are not avoidable because any such payments were intended by the parties to be contemporaneous exchanges for new value, and were in fact such exchanges; and 10) the alleged preferential transfers are not avoidable because they were made with earmarked funds.

## C.   The Cross-motions for Partial Summary Judgment

### I.   *The Plaintiff's Motion*

With respect to its fourth claim for relief, on which it seeks summary judgment based on the theory of fraudulent transfer, Mercury notes it must prove, under § 548: 1) Mercury received less than reasonably equivalent value in exchange for each transfer; and, 2) Mercury a) was insolvent on the date each transfer was made or became insolvent as a result of such transfer; b) was engaged in a business or transaction, or was about to engage n a business or transaction, for which any property remaining with Mercury was a unreasonably small capital; or c) intended to incur, or believed it would incur, debts beyond its ability to pay as such debts matured.

Mercury's Motion alleges that prepetition, the Colorado Subsidiaries' funds were transferred to Mercury on a daily basis.  The Colorado Subsidiaries deposited their operating cash each day in their own bank accounts, which were then "swept" into

Mercury's operating account, known as the "Concentration Account."  Then, at the beginning of each business day, sufficient funds were transferred from Mercury's Concentration Account to each subsidiary's account so the subsidiary could make necessary disbursements.  Mercury alleges it also used funds from the Concentration Account for its own purposes, that there was no written or other agreement about this arrangement, and that Mercury did not segregate the subsidiaries' funds in its Concentration Account.  Mercury had complete control over the funds in the Concentration Account, including how and when they were disbursed.

However, when a transfer was made to the Concentration Account from a subsidiary, the transfer was recorded on Mercury's balance sheet as a payable owed by Mercury to the subsidiary, or as a receivable from Mercury owned by the subsidiary. When a transfer was made from the Concentration Account to a subsidiary or to pay a subsidiary's expense, the transfer was recorded on Mercury's balance sheet as reducing a payable owed by Mercury to the subsidiary or as an unsecured debt owed by the subsidiary to Mercury, and these transactions appeared on Mercury's consolidated balance sheet as credits and debits with respect to the companies involved.  Therefore, the balance owed by Mercury to a subsidiary, or by a subsidiary to Mercury, varied from day to day depending upon whether the amounts transferred from a subsidiary to the Concentration Account were greater or lesser than the amounts transferred to the subsidiary or advanced on the subsidiary's behalf from the Concentration Account.

On July 28, 2018, the Concentration Account was held at US Bank.[3]  On that date, US Bank swept all the approximately $30 million from the Concentration Account, rendering Mercury insolvent.  A new account at Wells Fargo Bank, titled solely in Mercury's name, was opened late July 2008, and Mercury's subsidiaries, including the Colorado Subsidiaries, began to deposit most of their cash into the account, commingling the funds of the subsidiaries.  According to Mercury, the Wells Fargo account was intended to provide a cash management system similar to the previous Concentration Account.

2.    *The Defendants' Response*

The Defendants do not dispute Mercury's insolvency.[4]  They argue the question is whether the transfers constituted transfers of Mercury's interest in property. According to the Defendants, although Mercury states the undisputed facts show the Purchased Company Transfers were Mercury's funds, because funds titled in an entity's

___

[3]  It is not clear from the Amended Complaint or the Motion why the Amended Complaint alleges the Concentration Account was swept by Comerica Bank, while the Motion alleges it was swept by US Bank.

[4]  Undisputed Facts at ¶ 10.

name in a bank account are presumed to belong to that entity,[5] genuine issues of material fact exist as to who owned the funds at issue in the transfers.

Specifically, the Defendants allege Mercury glosses over the many distinctions between the facts in *Amdura* and the facts in the present case. The Court notes the *Amdura* Court found funds in a concentration account into which Debtor Amdura's subsidiaries' funds were deposited, and from which the subsidiaries' expenses were paid were not property of a subsidiary's bankruptcy estate, stating:

> In this case the concentration account was not only held exclusively in Amdura's name, but Amdura also possessed all other legally cognizable indicia of ownership. None of the money in the account was ever segregated; Amdura had, at least pre-petition, the right to spend the money entirely as it saw fit without concern for "whose money" it was spending; and Amdura in fact spent concentration account funds on its own obligations as well as those of the subsidiaries. Even if the parties' own characterization of the account were binding on this court, the record reveals no statements that controvert the existence of these rights of ownership.[6]

By contrast, the Defendants here argue Mercury and the Subsidiary Defendants always listed the cash as an asset of the Subsidiary Defendants on their balance sheets despite the fact the majority of their operating cash was held in Mercury's account.

In addition, the Defendants dispute Mercury's assertion it paid the transfers to the Colorado Subsidiaries purchased by Fidelity and received nothing in return.  Rather, the Defendants allege the Stock Purchase Agreement makes clear cash was not included within intercompany accounts which were eliminated pursuant to the Stock Purchase Agreement.

The Defendants further argue the majority of the operating cash at issue was deposited into Mercury's account by chance. If Wells Fargo had refused to do business with Mercury, the Colorado Subsidiaries presumably would have started depositing their operating cash into their own operating accounts as of July 30, 2008.  Accordingly, the Defendants state a genuine issue of material fact exists as to the purpose of these accounts, how the parties anticipated they would handle operating cash on an ongoing basis, and how their cash management plans affected ownership of the funds within Mercury's and the Colorado Subsidiaries' bank accounts.

---

[5]  The Defendants cite *Amdura Nat'l Dist. Co. v. Amdura Corp. (In re Amdura Corp.)*, 75 F.3d 1447, 1451 (10th Cir.1996).

[6]  *Id.*

They also contend the Colorado Subsidiaries were the source of the funds for the subject transfers, and the Colorado Subsidiaries, not Mercury, had control of the funds. The Defendants claim a genuine issue of material fact exists as to whether the funds underlying the transfers which were held in Mercury's bank accounts were owned by Mercury.  They further assert Mercury's reasonably equivalent value argument rests on the faulty premise that the Stock Purchase Agreement eliminated the Colorado Subsidiaries' rights to their operating cash.

### 3.  The Defendants' Motions

The Defendants' Initial Motion for Partial Summary Judgment was brought by all the Defendants, and states Mercury cannot bring claims against its subsidiaries because its Chapter 11 reorganization plan did not preserve such rights and claims. Citing an earlier decision of this Court, the Defendants assert after the acceptance of a Chapter 11 plan, a party's ability to enforce a claim once held by the bankruptcy estate is limited to that which is retained under the terms of the plan.[7]

The Second Motion for Partial Summary Judgment was brought by FNF Security Acquisition, Inc. ("FNF") only.  It contends Mercury is not entitled to a claim for breach of contract because it acted in bad faith by not disclosing Mercury's purchased companies' contingent liabilities, and because it cannot show FNF breached obligations under the Stock Purchase Agreement.  FNF also argues the claim for breach of the covenant of good faith and fair dealing must fail as a matter of law because of Mercury's failure to disclose the financial conditions of the Colorado Subsidiaries.  Therefore, FNF seeks summary judgment in its favor on Mercury's claims of breach of contract and breach of the covenant of good faith and fair dealing.

Specifically, FNF argues Mercury's claim for breach of contract fails as a matter of law because Mercury cannot establish: 1) the existence of an express or implied contract; 2) the breach of an obligation imposed by that contract; and 3) resulting damages to the plaintiff.[8]  FNF asserts Mercury and FNF are sophisticated parties who negotiated the terms of the Stock Purchase Agreement with the assistance of counsel and made their own judgments about the risks.   According to FNF, the parties bargained and included within the Stock Purchase Agreement a provision whereby FNF's obligation to pay the remainder of the purchase price was subject to several conditions which were not met, including disclosure of Mercury's contingent liabilities.

In order to state for a claim for breach of the implied covenant of good faith and fair dealing for FNF's refusal to pay the remainder of the purchase price, Mercury must show: 1) a specific implied contractual obligation, 2) a breach of that obligation by FNF,

---

[7] *Connelly v. City of Houston (In re Western Integrated Networks, LLC)*, 322 B.R. 156, 160 (Bankr. D. Colo. 2005) (citing 11 U.S.C. § 1123(b)(3)).

[8] FNF cites *VLIW Tech., LLC v. Hewlett.Packard Co.*, 840 A.2d 606, 612 (Del. 2003)

and 3) resulting damage to Mercury.[9]  Because Mercury cannot point to any specific implied contractual obligation or breach of that obligation, two of the essential three elements of this claim, FNF contends this claim is subject to summary judgment.

### 4.    The Plaintiff's Responses

In its response to the Motion for Partial Summary Judgment brought by all the Defendants, Mercury argues the Chapter 11 Plan confirmed in its Chapter 11 case preserved, unambiguously, Mercury's right to pursue avoidance claims.  Mercury notes it sued the Defendants before the confirmation of the Plan.  The Defendants, all of whom except FNF are its previous subsidiaries, are not creditors of Mercury, did not file proofs of claim against Mercury, and did not receive copies of the Plan or Disclosure Statement.  However, Section 8.03 of the confirmed Plan provides:

> Except as otherwise provided in the Plan, as of the Effective Date, pursuant to § 1123(b)(3)(B) of the Bankruptcy Code, any and all Causes of Action accruing to the Debtor, or the Debtor in its capacity as debtor-in-possession, not released or compromised pursuant to this Plan, including, without limitation, actions under §§ 544, 545, 547, 548, 549, 550, 551, and 553 of the Bankruptcy Code, shall remain assets of the Estate, and the Debtor shall have the authority to prosecute such Causes of Action for the benefit of the Estate.[10]

According to Mercury, further "magic words" were not required to be included in the Plan, and the Defendants already had notice, through the suit filed against them, that Mercury intended to pursue the action post-confirmation.

As to Defendant FNF's Motion for Partial Summary Judgment, Mercury contends none of the provisions of the Stock Purchase Agreement excuse FNF from paying the rest of the contract price, and argues the Agreement does not contain detailed representations and warranties.  Further, Mercury disputes FNF's allegations it was pressured into buying the Colorado Subsidiaries, and contends FNF's representatives understood the financial terms of the parties' agreement before they traveled to Denver. Mercury states FNF asked for and received information about the Colorado Subsidiaries.  According to Mercury, FNF's representatives were sophisticated business people who proceeded because they were obtaining valuable assets for a fraction of their value.

Mercury therefore argues FNF did not meet its burden under Rule 56, because disputed issues of fact remain as to what the FNF representatives knew and when they

---

[9]  FNF cites *Kelly v. Blum*, 2010 WL 629850 at *13 (Del. Ch. February 24, 2010) (Not Reported in A. 2d).

[10]  Plaintiff's Response at 4.; Underlying Case Docket No. 1679, Chapter 11 Plan, at 10,  ¶ 8.03.

knew it, whether they received information they requested, and whether the information they received was accurate.  Mercury maintains FNF received all information it requested, and disputes FNF's allegation the Plaintiff's representations were inaccurate or misleading.  Mercury alleges FNF did not conduct appropriate due diligence before it purchased the Colorado Subsidiaries, and so cannot now assert it did not receive the required information.  Further, Mercury asserts FNF controlled certain of the information it claims it needed to make the decision whether to buy the Colorado Subsidiaries, and cannot now argue the lack of such information justifies FNF's failure to pay the remaining obligations under the Stock Purchase Agreement.  Lastly, Mercury states FNF's Motion attempts to introduce parole evidence outside the four corners of the Stock Purchase Agreement, supporting a finding that disputed issues of material fact exist.

## DISCUSSION

Summary judgment shall be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[11]  The burden for establishing entitlement to summary judgment rests on the movant.[12]  Summary judgment is not appropriate where a dispute exists as to facts which could affect the outcome of the suit under relevant law.[13]  A genuine dispute over a material fact exists when the "evidence supporting the claimed factual dispute [is] shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."[14]  In reviewing motions for summary judgment, the Court must view the record in the light most favorable to the non-moving party.[15]  As noted by Chief Judge Howard R. Tallman of this Court:

> This Court exercises great circumspection in the granting of a motion for summary judgment.  There should always be a natural preference for allowing the parties to proceed to a trial on the merits where there is any factual matter subject to a bona fide dispute which bears on the ultimate resolution of the controversy.  *Associated Press v. U.S.*, 326 U.S. 1, 6, 65 S.Ct. 1416, 1418, 89 L.Ed. 2013 (1945) ("Rule 56 should be cautiously invoked to the end that parties may always be afforded a trial where there is

---

[11] FED. R. CIV. P. 56, (as incorporated by FED. R. BANKR. P. 7056);  *Celotex Corp. v. Cattrett*, 477 U.S. 317, 322 (1986).

[12] *Celotex*, 477 U.S. at 323.

[13]  *Carey v. U.S. Postal Service,* 812 F.2d 621, 623 (10th Cir. 1987).

[14]  *Anderson v. Liberty Lobby*,  477 U.S. 242, 249 (1986) (quoting *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-289 (1968)).

[15]  *Gray v. Phillips Petroleum Co.*, 858 F.2d 610, 613 (10th Cir. 1988).

a bona fide dispute of facts between them"). "Where it appears however that there is no genuine issue as to any material fact upon which the outcome of the litigation turns, the case is appropriate for disposition by summary judgment and it becomes the duty of the court to enter such judgment." *Whelan v. New Mexico Western Oil and Gas Company*, 226 F.2d 156, 159 (10th Cir.1955).[16]

As revealed by the background facts, above, the Stock Purchase Agreement is a complex contract. The cross-motions for summary judgment contain much conflicting affidavit testimony, and conflicting positions on the interpretation of the Agreement.

At the least, the following matters remain in dispute: 1) whether Mercury owned the cash that was transferred; 2) whether the Stock Purchase Agreement was breached by FNF, and 3) whether Mercury's Plan provided adequate reservation of rights to continue the action against the Colorado Subsidiaries.[17] Accordingly, genuine issues of material fact remain to be tried – allowing the Court to evaluate the conflicting testimony as it is presented live, rather than by affidavit.

Summary judgment is therefore inappropriate for either FNF or Mercury on the Plaintiff's Motion for Partial Summary Judgment, or the Defendants' Second Motion for Partial Summary Judgment. In addition, regarding the Defendants' Initial Motion for Partial Summary Judgment, based on the above discussion of the Disclosure Statement, Plan, and knowledge of the Defendants and the Colorado Subsidiaries of Mercury's intent to continue prosecution of this adversary proceeding post-confirmation, the Court finds genuine issues of material fact remain to be tried, and the Defendants have not shown entitlement to judgment as a matter of law.

## CONCLUSION

Based upon the above findings

IT IS ORDERED *Plaintiff's Motion for Partial Summary Judgment* (Docket No. 62) is DENIED.

---

[16] *National Labor Relations Board v. Gordon (In re Gordon)*, 303 B.R. 645, 650 (Bankr. D. Colo. 2003).

[17] The Court notes with respect to whether Mercury retained the ability to pursue the action against the Colorado Subsidiaries, the case law addresses specific plans and disclosure statements, different from those in this case, providing guidance but not certainty as to what reservations of rights would be sufficient. *See In re Texas Wyoming Drilling, Inc.*, 647 F.3d 547, 550 (5th Cir. 2011); *In re Mako, Inc.*, 985 F.2d 1052, 1055 (10th Cir. 1993); *In re Western Integrated Networks, LLC*, 329 B.R. 334, 338 (Bankr. D. Colo. 2005).

IT IS FURTHER ORDERED *Defendants' Motion for Partial Summary Judgment* (Docket No. 90) is DENIED.

IT IS FURTHER ORDERED Defendant FNF Security Acquisition, Inc.'s Additional Motion for Partial Summary Judgment (Docket No. 124) is DENIED.

Dated May 15, 2012                                BY THE COURT:

Michael E. Romero
United States Bankruptcy Judge